Rogers, Circuit Judge, concurring:
I join the court's opinion holding that the district court abused its discretion by allowing Agent Magnuson to testify as an expert witness regarding specific cell tower distances and ranges of distances. I write briefly on the relationship between the district court's "gatekeeping" obligation under Federal Rule of Evidence 702 and the government's disclosure obligations upon defense request under Federal Rule of Criminal Procedure 16(a)(1)(G).
I.
A witness may testify as an expert only if
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.
FED. R. EVID. 702. The district court must serve as a gatekeeper to the admission of expert testimony. Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Although perhaps originally spawned by concerns about "junk science" masquerading as science, see Gen. Elec. Co. v. Joiner , 522 U.S. 136, 153, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (Breyer, J., concurring), the "gatekeeper role" ensures more broadly that witnesses possess the relevant training or experience in the field of expertise on which they will testify, and that, if found qualified, their testimony stays within the realm of their expertise. "[T]o ensure the reliability and relevancy of expert testimony," Kumho Tire Co., Ltd. v. Carmichael , 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the district court has a threshold obligation to independently determine whether and to what extent a witness can testify as an expert, as well as a continuing responsibility to ensure, upon defense objection, that the expert's testimony stays within permissible bounds. The heightened aura and weight to which a fact finder is likely to attach to expert testimony, as compared to lay testimony, cf . United States v. Williams , 827 F.3d 1134, 1160-61 (D.C. Cir. 2016), warrants the two-part nature of the gatekeeper role.
The district court's ability to fulfill its gatekeeping obligations is not unrelated to the government's compliance with Federal Rule of Criminal Procedure 16. Rule 16 states in relevant part:
At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence... The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.
FED. R. CRIM. P. 16(a)(1)(G).
This disclosure mandate is designed to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Adv. Comm. Note to 1993 Amendment. Further, prompt notice of a putative expert's qualifications "will permit the requesting party to determine whether in fact the witness is an expert within the definition of Federal Rule of Evidence 702." Id. The Rule reflects a trend toward "freer disclosure" in *340 criminal procedure. 2 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 251 (4th ed. 2018).
The Rule provides the district court with a range of remedial options: a continuance, exclusion of the evidence, or "any other order that is just under the circumstances." FED. R. CRIM. P. 16(d)(2). The district court's rulings under Rule 16 and FRE 702 are reviewed for abuse of discretion, United States v. Day , 524 F.3d 1361, 1367, 1370 (D.C. Cir. 2008), and an error is harmless if there was no "substantial and injurious effect or influence in determining the jury's verdict," Kotteakos v. United States , 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).
II.
What is striking in the instant case is how the government's failure to disclose promptly its proposed expert's opinions and the bases for those opinions can hamstring the district court's effort to separate reliable expert testimony from "junk science." On June 10, 2011, defense counsel, by letter to the trial prosecutors, requested "a written summary of any expert testimony which the government intends to use under Rule[ ] 702 ... in its case-in-chief at trial." The joint pretrial statement of May 21, 2013, indicated that FBI Special Agent David Magnuson would testify as an expert in historical cell-site analysis. Approximately one month before trial, the government turned over its expert's "report." This consisted of a series of maps where cell tower locations and angles were plotted; no "written summary" describing the nature of Magnuson's opinion was included.
Defense counsel moved to exclude Magnuson's testimony as an expert, arguing his testimony relied on a methodology that was "unreliable and irrelevant," and requested a hearing.
Agent Magnuson's report does not describe the bases and reasons for his opinions or the inferences he draws. See Fed. R. Crim. P. 16(a)(1)(G). The report merely plots the presumed locations from which calls were made, the cell tower from which the call registered at its origin, and the relation to the crime scenes charged in this case. There is no indication how these plotted called are placed on the map or what determined their placement. The cell towers to which certain cell phones connected on a map have been used by Agent Magnuson to assume a basic coverage area. This is not supported by the facts or record in this case.
Def.'s Mot. to Exclude the Expert Testimony and Cellular Analysis Report and Charts of Special Agent David Magnuson (June 12, 2013) ("Motion to Exclude") at 2-3. Further, the defense argued that if Magnuson "testifies only to the cell tower location and side of the cell tower antennae that received the call," then he will be "acting not as an 'expert' but merely as a summary witness." Id . at 13. Referencing Magnuson's prior expert testimony, the defense also suggested that if allowed to testify as an expert he "may attempt to go far beyond this summary testimony." Id .
In opposing the Motion to Exclude, the government represented that Magnuson "will not claim to have determined the exact location of the phone user, but rather the general location where a cell phone would have to be located to use a particular cell tower and sector." Gov't Opp'n to Def.'s Mot. to Exclude Expert Testimony ("Gov't Opp'n") (June 12, 2013). Further, claiming neither a Dauber t hearing nor peer review of the cell-site methodology was needed because it had been approved by a number of district court judges, the government also did not describe how Magnuson would use the cell tower locations *341 in his "report" to project the likely area where a cell phone was located. The district court denied the defense motion, relying on the government's representations, Magnuson's "report," and prior district court rulings allowing expert testimony on cell-site analysis. See United States v. Machado-Erazo , 950 F.Supp.2d 49, 55-58 (D.D.C. 2013).
Hours before Magnuson was scheduled to testify on the eighth day of the trial before a jury, the government turned over to the defense a document titled "Basic Principals [sic] Utilized in Record Analysis." It stated: "As a GENERAL RULE, most towers (depending on the environment) have a radius of approximately ONE or TWO MILES (greater or less distances are also common)." Defense counsel objected to the late disclosure and requested that Magnuson be treated as a lay witness. The district court permitted Magnuson to testify as an expert after the prosecutor represented Magnuson would testify only "as to the general range of the cell towers" and that the issue had been ruled on when the Motion to Exclude was denied. Trial Tr. 25-26 (July 8, 2013). Magnuson testified at length over two days (91 transcript pages) as an expert at appellants' trial. His testimony included a discussion of the areas where cell phones belonging to appellants and a co-conspirator were located on the day of Felipe Enriquez's murder. Magnuson also testified that a cell phone "had to be within a half mile" of a particular cell tower for the phone to connect to that tower. Id. at 51. On that basis, a cell phone belonging to the co-conspirator was located near Machado-Erazo's home on the day of the murder.
III.
At the point the district court would have had to make its threshold gatekeeping determination for purposes of FRE 702, the government had yet to disclose the "written summary" of its expert's testimony as required by Rule 16(a)(1)(G). The record does not reveal exactly why. Defense counsel had alerted the government to its obligation under Rule 16(a)(1)(G) two years before trial, and Magnuson was a federal employee who had previously testified as an expert. To the extent the trial Assistant U.S. Attorney advised the district court that he had only obtained the document explaining cell-site analysis methodology shortly before Magnuson testified on the eighth day of the jury trial, that did not absolve the government of its obligations under Rule 16. The government's "dribbling out" of information about the nature and scope of its expert's testimony never quite described the level of detail on which Magnuson would testify at trial, much less the methodology he used, potentially leaving defense counsel unclear about the nature and scope of his expert testimony.
The consequence pertinent here is that the government's conduct interfered with the district court's ability to fulfill its gatekeeping role under Daubert and FRE 702. It hampered the district court in assessing with any measure of certainty whether the expert's testimony would be reliable much less, as defense counsel feared, would stray at trial beyond the contents of his "report." Neither Magnuson's "report" nor the government's representations described the methodology that he would use to connect appellants' cell phones to the cell tower locations. The district court attempted to fill this gap by relying on descriptions of cell-site methodology in other cases. This assumed Magnuson's methodology would be the same in appellants' case and limited the court's ability to pose inquiries of its own. In opposing the Motion to Exclude, the government implicitly invited this flawed approach *342 by emphasizing that cell-site analysts had been accepted as experts by other district court judges, by arguing that the case appellants relied on where the district court rejected cell-site expert testimony was different, and by asserting that peer review was unnecessary because "cell phone technology is neither novel nor particularly complex." Gov't Opp'n at 6. Although a witness's testimony as an expert on a general subject matter in another case may inform the Daubert analysis, that circumstance is not sufficient. The district court's "gatekeeping inquiry must be tied to the facts of a particular case." Kumho Tire , 526 U.S. at 150, 119 S.Ct. 1167 (internal quotations omitted). Indeed, "judicial acceptance is not relevant; what matters is general acceptance in the relevant expert (scientific or otherwise) community." United States v. Hill , 818 F.3d 289, 297 (7th Cir. 2016).
The district court judge who denied the Motion to Exclude found Magnuson's expert opinion reliable based principally on cell-site analyses accepted by two other district court judges. Machado-Erazo , 950 F.Supp.2d at 55-58 (citing United States v. Jones , 918 F.Supp.2d 1 (D.D.C. 2013) ; United States v. Davis , No. 11-60285-CR, 2013 WL 2156659 (S.D. Fla. May 17, 2013) ). In Jones , the district court allowed an FBI agent to testify as an expert because his cell-site analysis was based on a reliable methodology, which the government had "clearly explain[ed]," and the agent did "not purport to portray the 'coverage area' of any particular cell tower or antenna." 918 F.Supp.2d at 4-5. In Davis , the district court found, after holding a Daubert hearing, that Magnuson was "qualified to opine on call detail records" and "the areas most likely to fall within the sector serviced by a particular cell tower," by reason of his "knowledge, skill, experience, training, and education." 2013 WL 2156659, at *4.
If Daubert is to have meaning, then district court had to satisfy itself that the witness in appellants' case was an expert on a particular subject based on the witness's actual methodology and the scope of the opinions the witness would offer at trial. The expert's testimony in Jones was limited in scope, and the district court could not assume Magnuson's testimony would be the same in appellants' case as in Davis . The government's Rule 16 disclosures and vague representations were unhelpful in this respect; they did "not ... clearly indicat[e] the level of precision-or imprecision-with which [cell-site] evidence pinpoints a person's location at a given time." Hill , 818 F.3d at 299. Further, while defense counsel had alerted the district court to potential flaws in Magnuson's methodology, the district court found none, relying not on the government's explanation of the methodology he would use in appellants' case, but on the description of his methodology in Davis . See Machado-Erazo , 950 F.Supp.2d at 55-56. Consulting other judges' analyses may be informative or persuasive, but not dispositive. Absent an independent evaluation of the expert's methodology and the nature of the expert's proposed testimony, real life tragedies can occur. See, e.g ., Pamela Colloff, He Has Spent Three Decades in Prison. Now Experts Dispute the Evidence. , N.Y. TIMES , July 24, 2018; see also Leora Smith, How an Unproven Forensic Science Became a Courtroom Staple , PROPUBLICA , May 31, 2018.
For much the same reason, Daubert 's monitoring obligation was frustrated. The district court judge who presided at appellants' trial relied on the pretrial Daubert ruling, which in turn relied on rulings in other cases, including one that involved a narrower use of a cell-site expert than occurred at appellants' trial and another that did not reveal the scope of Magnuson's *343 expert testimony. Those rulings could not eliminate the need to independently monitor the expert's testimony at appellants' trial. Notwithstanding defense counsel's alert that Magnuson's expert testimony could stray beyond the government's Rule 16 pretrial disclosure of his "report," cf. United States v. Moore , 651 F.3d 30, 60 (D.C. Cir. 2011), Magnuson was allowed to opine that a cell phone "had to be within a half mile" of a particular tower. Trial Tr. 51 (July 8, 2013). Yet the maps in Magnuson's "report" contained no measuring scale and the document produced on the eighth day of trial stated only that the general range of a cell tower is "approximately ONE or TWO miles (greater or less distances are also common)." Magnuson claimed the basis for his opinion was "the very nature of the cellular network, the fact that it's divided up into cells of [radio frequency] energy." Trial Tr. 51 (July 8, 2013). How Magnuson derived "within a half mile" from those vague statements was explained neither for the jury nor earlier for the district court. Absent a foundation, Magnuson's half-mile opinion was inadmissible under FRE 702. Even if the district court had remedial discretion to deny the defense request that Magnuson be treated as a lay witness due to the government's non-compliance with Rule 16, it was error to allow the jury to consider unsupported expert testimony.
In appellants' case, however, the Rule 16 and Daubert failings do not entitle them to relief because they show no prejudice: The government's evidence of their guilt was strong, including wiretap and co-conspirator testimony linking them to the murder, Op. 338, and the government's late Rule 16 disclosures were cumulative of information in its opposition to the Motion to Exclude. Consequently, "it was highly improbable that any changes in the facts could have materially changed the conclusion" of the jury at trial. United States v. Bresil , 767 F.3d 124, 127 (1st Cir. 2014) ; see United States v. Martinez , 657 F.3d 811, 817 (9th Cir. 2011). Still, what happened here with regard to the admission of Magnuson's expert opinion is concerning. Although "the prosecution is entitled to prove its case by evidence of its own choice," Old Chief v. United States , 519 U.S. 172, 186, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), one-sided enforcement of the evidentiary and procedural rules would be troubling, especially in criminal cases where liberty is at stake.